

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY CALDWELL,** | : | CIVIL ACTION  **13  162** |
| Plaintiff | : | JURY DEMAND |
| v. | : | |
| **CAPT. LAWRENCE NODIFF, LT. NICHOLAS BROWN,** and **CITY OF PHILADELPHIA,** | : | |
| Defendants. | : | |

## COMPLAINT

I.  INTRODUCTION

1. Plaintiff, MARY CALDWELL, brings this civil action seeking all relief provided under the law including compensatory damages and punitive damages.

2. The relief sought is provided under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 ("ADA"), and the, Pennsylvania Human Relations Act, for discrimination on the basis of my disability.

II.  JURISDICTION / VENUE

3. Jurisdiction for the Pennsylvania District Court to hear this case is pursuant to a Federal Question; Title VII of the Civil Rights Act of 1964; and the ADA of 1990.

4. Venue is proper in the Pennsylvania District Court because the cause of action occurred in Philadelphia County which is in the Eastern District of Pennsylvania.

III.  THE PARTIES

5. MARY CALDWELL is a resident of the County of Philadelphia, Pennsylvania, and is bringing this action as the Plaintiff.

1

6. CAPTAIN LAWRENCE NODIFF, is a resident of the County of Philadelphia, Pennsylvania; he is my commanding officer with control over my terms and conditions of employment with the City of Philadelphia police department.

7. LIEUTENANT NICHOLAS BROWN, is a resident of the County of Philadelphia, Pennsylvania; he is my supervisor with control over my terms and conditions of employment with the City of Philadelphia police department.

8. CITY OF PHILADELPHIA is my employer.

IV. FACTS

9. I am an African American female.

10. I was hired June 23, 1997.

11. My Supervisors were Capt. Laurence Nodiff and Lt. Nicholas Brown.

12. I was diagnosed with Hypertension in 2009.

13. Hypertension affects my daily activities and routines due to its effects and the effects of my prescribed medications. I have bouts of dizziness, elevated blood pressure, severe headaches and muscle weaknesses and pain due to prescribed medications and the causal effects of the disease.

14. My supervisors were made aware of my disability in 2010, when I was transferred to South Detectives. I verbally expressed my disability and condition when I was asked about my sick time usage. I was told by Capt. Nodiff that he would not tolerate sick time usage from me, that he had heard about my sick time usage from my previous supervisor in my previous assignment. Multiple times after that occasion, when I was asked why I was out sick or hospitalized I explained to them again verbally and via doctor's note about my disability. My explanations were disregarded and I was continually counseled concerning my illness and sick time usage which was out of my control and I had ample accruals of time "Holiday, Sick and

vacation time". Lt. Brown informed me that Capt. Nodiff did not like my sick usage and that he was going to "Get me"- referencing that I would be transferred to a daywork rotating shift position. An example of bias is Det. Neil Aitken, a white male, used excessive sick time and called out multiple times for various reasons, not during his scheduled vacation time was reassigned to a Positive assignment of working in Capt. Nodiff's 5 Squad group- which is less stressful and is considered a rewarding and prized position. Det. Conaway, a white male was admitted to a hospital for medical reasons and he was not sick checked in the hospital or at home. "Per Det. Conaway's own admission". When I was admitted to the hospital for medical reasons in June 2011, suffering from an extremely high blood pressure of 280/180, I was given medications to prevent immediate heart attack and stroke. Later that evening while I was recuperating in my hospital room, an attempt was made by Sgt. Ransom, to sick check me and ensure that I was admitted to the hospital at approximately 1:00 AM. Hospital staff refused police entry and access to me due to the fact that I was heavily sedated. In April 2012, I fell ill while working my 12x8 AM shift and informed Lt. Brown that I felt very ill and needed emergency assistance (9-1-1). He told me to call my husband and to relax in a chair. I became increasingly agitated with the chest pains that I was experiencing and severe dizziness, which led me to believe that I was experiencing a heart attack or stroke. I walked downstairs to the 1st police District where I collapsed at the window. A civilian employee Cathie Cunningham came to my assistance and called 9-1-1. Medics arrived and transported me to Methodist Hospital E.R. where while being treated, Sgt. Hampton arrived and informed me that Capt. Nodiff told him to come and tell me that my shift had changed, that the Capt. wanted to know why I was at work last night, and to check on my health status in that order (verbatim).

15.     My supervisors reacted negatively to my sick time usage due to my disability by written and verbal counseling about my illness, sick usage and sub sequential squad change as

3

punishment for using my sick time, even when I did not have the sick time accrued for some usage I was carried "T" with no pay for those days, when other accrued time could have been utilized – such as Holiday or Vacation time. This is a form of punishment as Police Directives suggest other time be deducted and utilized when an employee does not have sufficient sick time to cover the absence. This change of squad affects my ability to maintain regular check-ups with my physician and gain control of and monitor my hypertension, thereby putting my health at further risks. Capt. Nodiff was notified via police memorandum on March 2, 2012 informing him that my current shift assignment would be optimal for me to make my doctor's appointments and scheduled testing for my disease. He knowingly changed my shift while bearing the knowledge that I have frequent doctor's appointments that are mandatory to monitor and control my illness.

16. There were other employees, all male white who used sick time and they were not transferred from the squad for sick time usage or sick checked per the department guidelines at home or in the hospital such as I, a black female was. On many occasions several of these white males were out sick or unscheduled vacation ( my personal knowledge as I was the call taker when they called in vacation or sick and I entered the manpower into the DAR system) and I was one of two employees who covered the entire shift with low manpower. These employees were not reprimanded or disciplined for calling out sick on short notice on holidays or days in which personnel were aware that manpower was low. No additional personnel were paid overtime to assist in the workload in these times of low manpower when I was working however, my supervisors accused me of causing a manpower shortage and of being unreliable causing them to have to hire additional personnel to cover my shift. This is a retaliatory statement as I have very little control over my disability.

17. **I want to sue the City of Philadelphia, and Capt. Nodiff and Lt. Brown for discrimination and retaliation based on my disability, race and sex.**

V. RELIEF

1. I am seeking relief for compensatory and punitive damages, from retaliation from my supervisors. And for my employment position and against any discrimination of my disability, race and sex.

Date:   1/10/13

Name: Mary Caldwell